```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
GWENDOLYN AND JOHN LEE o/b/o
DASHAWN SMITH,

                    Plaintiffs,              04-CV-6072T

v.                                           DECISION
                                             and ORDER
JO ANNE BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiffs Gwendolyn and John Lee bring this action on behalf of her grandson DaShawn Smith, ("DaShawn"), seeking reversal or remand of the defendant's final decision denying their grandson's application for Social Security benefits. Specifically, plaintiffs allege that their grandson suffers from Attention Deficit Hyperactivity Disorder ("ADHD"), learning disorders, and language delays, all of which render him disabled for purposes of receiving Supplemental Security Income benefits.

By motion dated October 13, 2004, the Commissioner of Social Security ("Commissioner") seeks judgment on the pleadings on grounds that her determination is supported by substantial evidence contained in the record. By cross-motion dated November 10, 2004, plaintiffs move for judgment in their favor on grounds that the Commissioner's determination was against the weight of the evidence

For the reasons set forth below, I find that the Commissioner's determination is not supported by the substantial

evidence contained in the record. Rather, the record reveals that DaShawn suffers from marked limitations in three areas of functioning, and therefore is disabled under the Commissioner's rules. I therefore deny the Commissioner's motion for judgment on the pleadings, and grant the plaintiffs' cross-motion for summary judgment.

## BACKGROUND

I.   Procedural History

Plaintiffs Gwendolyn and John Lee are the maternal grandparents of DaShawn Smith, an infant born on November 8, 1993. On November 21, 2000, the plaintiffs filed an application for Supplemental Social Security Income benefits on behalf of DaShawn, who at the time was approximately 7 years old. (Tr. 152)[1] Plaintiffs contended that their grandson suffered from learning disabilities and attention deficit syndrome. (Tr. 156).

Plaintiffs' application for benefits was denied on March 21, 2001, and again on reconsideration on May 30, 2001. (Tr. 86-88, 91-93). Plaintiffs appealed the determinations, and on May 12, 2002, DaShawn and his grandfather John Lee appeared without representation at a hearing before an Administrative Law Judge ("ALJ")(Tr. 39-57). By Decision dated May 31, 2002, the ALJ determined that DaShawn was not disabled under the Social Security

---

[1] Citations refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer.

Regulations, and therefore was not entitled to Supplemental Security Income Benefits.  (Tr. 17-27)  On July 24, 2002, plaintiffs appealed the ALJ's decision to the Social Security Appeals Council, and on September 25, 2002, the Appeals Council remanded the case to the ALJ for further proceedings, including a reevaluation of the evidence and consideration of new evidence that had not previously been presented to the ALJ.  (Tr. 120-121).

On May 12, 2003, the ALJ scheduled a new hearing pursuant to the order remanding the case.  (Tr. 58-62)  Plaintiffs again appeared without representation, and the hearing was adjourned to allow plaintiffs to obtain representation.  (Tr. 58-62).  Plaintiffs obtained a representative, and proceeded with a hearing on July 9, 2003.  (Tr. 63-83)  Thereafter, on July 25, 2003, the ALJ issued a second decision finding that DaShawn was not disabled.  (Tr. 17-25).  Plaintiffs appealed the determination to the Social Security Appeals Council, which, by Order dated December 26, 2003, affirmed the ALJ's decision and denied plaintiffs' claim for benefits. (Tr. 6-8).  Plaintiffs timely filed the instant action on February 23, 2004.

II.  <u>Factual Background</u>

A.   Family History

DaShawn Smith was born on November 8, 1993.  His mother was approximately 16 years old at the time she gave birth to DaShawn,

and there is a suggestion in the record that she abused alcohol while pregnant with DaShawn.  (Tr. 227, 404, 478-479).  She had attention and behavior problems as a child, and was considered violent.  (Tr. 404) DaShawn's mother has a history of mental health issues, incarceration, and alcohol abuse.  (Tr. 232, 404)  There is no indication that DaShawn's father has any contact with DaShawn.  Prior to reaching the age of two, DaShawn's doctor suspected that DaShawn was being neglected by his mother, and contacted Child Protective Services.  A review of DaShawn's medical records reveals that while DaShawn lived with his mother, she often failed to keep medical appointments for DaShawn.  (Tr. 474, 475, 477, 480, 482, 484, 488, 489, 491, 494).  While in the care of his mother, DaShawn contracted lead poisoning, and though his mother often failed to keep appointments regarding his treatment, he was eventually treated for the condition.  (Tr. 47-48, 228, 474-494).

Custody proceedings were initiated against the mother, and DaShawn was placed with his grandparents.  DaShawn's mother was allowed only supervised visits, but often did not visit her son.  (Tr. 232).  In 1999, pursuant to a court order, he was permanently placed with his grandparents, who themselves have two young children, one of whom is the same age as DaShawn.  (Tr. 45, 404).  DaShawn's grandparents are very supportive of, and work closely with DaShawn.  (Tr. 244)

B.   Academic and Social History

In November, 1999, DaShawn was evaluated for learning disabilities by the Rochester City School District Committee on Special Education at the request of his grandparents. (Tr. 241) A speech-language assessment revealed several developmental delays with respect to vocabulary, grammar, and short-term auditory memory. (Tr. 344). On November 22, 1999, psychologist Anne Cleary ("Cleary") evaluated DaShawn and noted that he had difficulty maintaining attention and concentration during testing. (Tr. 245) He had difficulty expressing himself; often interrupted and engaged in irrelevant conversation; and answered questions impulsively without first thinking about the answers. (Tr. 245). His I.Q. of 87 placed him in the low-average to average range. While his reading was close to grade level, he scored well below grade level in spelling, math, and language based tasks. (Tr. 247-248). Cleary indicated that DaShawn was highly impulsive, unable to control his behavior, and engaged in inappropriate behavior outside of school. (Tr. 248) She recommended that he be tested for Attention Deficit Hyperactivity Disorder. ("ADHD") (Tr. 248). Observation of DaShawn in the classroom revealed that DaShawn was unfocused, and was hesitant to participate in group reading. (Tr. 240) His first grade teacher reported that DaShawn could identify only 18 of 54 upper and lower case letters, and identified numbers randomly. (Tr. 255). In February, 2000, the CSE reported that

DaShawn exhibited the profile of a learning disabled student. (Tr. 250)

Cleary evaluated DaShawn again on June 19, 2000 (Tr. 241-243). She noted that DaShawn continued to exhibit poor academic performance that was below grade level. (Tr. 242) He was easily frustrated, distracted, and impulsive. (Tr. 242)

DaShawn's academic and social problems continued, and he was required to repeat first grade. (Tr. 180) On November 14, 2000, the CSE placed him in a special education class. (Tr. 189-198). By that time, he had been diagnosed with ADHD. Classroom observation revealed that DaShawn continued to be easily frustrated and distracted; that he often left his seat, would shout out inappropriately, demanded his teacher's attention, and could become defiant. (Tr. 253). DaShawn has continued in special education classes throughout his academic career, and despite having repeated first grade, continued to perform below grade level academically.

DaShawn received several warnings, reprimands, and suspensions from bus privileges as a result of disruptive and aggressive behavior while on schools busses. On December 7, 2001, he was reprimanded after failing to comply with the direction of a bus driver. Instead of obeying the bus driver, DaShawn started punching his book bag and screaming. (Tr. 468) On January 15, 2002, he was suspended for spitting in the face of another student, pushing smaller children, and hitting other students. (Tr. 466)

On February 7, 2002, he tripped a fellow student. (Tr. 464). On February 27, 2002, he was suspended for slapping a student, and for kicking and punching a seat. (Tr. 460). On April 4, 2002, he was suspended for hitting a student on the face with a tennis ball. (Tr. 462)

    C.   Medical Evidence

DaShawn was given a Pediatric Neurodevelopmental Evaluation by Doctor Stephen Bauer on September 7, 2000. (Tr. 387-414) Dr. Bauer diagnosed DaShawn with ADHD, Developmental Reading Disorder, Developmental Written Language Disorder (including visual motor/ pencil skills), and Developmental Language Disorder. (Tr. 390) DaShawn was prescribed Ritalin, which was later changed to Metadate CD 20, and then to Concerta in an attempt to control DaShawn's behavior more evenly throughout the day. (Tr 501) Medical records indicate that on occasion DaShawn has treated with psychiatric therapists.

On February 22, 2001, DaShawn was given an independent psychiatric examination in conjunction with his application for Social Security benefits. The consulting physician noted that DaShawn suffered from hyperactivity and attentional difficulties; that he required placement in special classes; would continue to require treatment; and would have difficulty in a competitive school environment. (Tr. 419).

DISCUSSION

I.   Jurisdiction and Scope of Review.

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB, 305 U.S. 197, 229 (1938).  Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo).  The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim. Finally, the court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached."  Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted).

II.  The Parties' Motions for Judgment on the Pleadings

The Commissioner moves for judgment on the pleadings on grounds that there is substantial evidence in the record supporting

her determination that plaintiffs' grandson is not disabled. Plaintiffs cross move for judgment on the pleadings contending that their grandson's impairments meet or are functionally equivalent to the standards for a listed disability under the Social Security regulations.

    A.   <u>Legal Standards</u>

An applicant for Social Security Disability benefits will be found disabled if he or she suffers from a disability listed in the Social Security Regulations, found at 20 C.F.R. Sec. 404, Subpart P, Appendix 1.  An applicant for benefits will also be found disabled if he or she has an impairment or combination of impairments that is functionally equivalent to a listed impairment. 20 C.F.R. § 416.924(d).

Plaintiffs contend that their grandson is disabled as a result of his Attention Deficit Hyperactivity Disorder, a disability listed at Section 112.11 of the Regulations.  Plaintiffs contend that even if DaShawn's impairments do not meet the definition of a disabling condition, his impairments are medically or functionally equivalent to the listed impairment, and therefore he is disabled. For the reasons that follow, I find that the substantial evidence in the record demonstrates that DaShawn's impairments are medically equivalent to the listed impairment of ADHD, and therefore, Deshawn is disabled.

    B.    Substantial evidence supports the conclusion that <u>plaintiffs' grandchild is disabled</u>.

Under the regulations applicable to this action, an applicant will be determined disabled where his or her impairments are the functional equivalent of listed impairments. 62 Fed. Reg. 6408 (1997); 20 C.F.R. Secs. 416.924(d), 416.926(a)(1997). An impairment is functionally equivalent to a listed impairment if the applicant exhibits marked limitations in two of six specified areas of functioning, or suffers from an extreme limitation in one of the six areas. The areas of consideration are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting with and relating to others, (4) moving about and manipulating things, (5) self care, and (6) health and physical well being . 20 C.F.R. Sec. 416.926a(b)(1)(I-vi).

A "marked impairment" is one that interferes with ones ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(ii(2) An extreme impairment exists where the impairment seriously interferes with a person's ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(ii)(3).

In the instant case, I find that DaShawn suffers from marked impairments in the areas of attending to and completing tasks, interacting with and relating to others, and acquiring and using information. There is substantial evidence in the record demonstrating that DaShawn's ADHD prevents him from attending to

age appropriate tasks.  Virtually every observation made by a teacher or medical professional noted that DaShawn was unable to remain attentive and concentrate on a given task, be it evaluative testing or a school assignment.  Similarly, many of DaShawn's evaluators noted his impulsiveness and inability to control behavior.  These deficiencies have been well documented by both school and medical professionals, and have persisted over several years.  Accordingly, I find that DaShawn suffers from a marked impairment with respect to attending to and completing tasks.

Similarly, DaShawn suffers from a marked impairment with respect to interaction with others.  The record includes several disciplinary violations demonstrating that DaShawn often strikes or pushes his fellow students when on the school bus.  When DaShawn was reprimanded by bus drivers, he often either became enraged, which resulted in punching or kicking, or cried uncontrollably.  In class, he would sometimes engage in inappropriate behavior including shouting and demanding attention from his teacher. DaShawn's grandfather testified that DaShawn is often involved in fights in his neighborhood.  (Tr. 73).

While the fact that a child may get into a fight on a school bus does not warrant a finding that the child is disabled, or that the child suffers from a marked impairment in the area of social interaction, in this case, it is clear that DaShawn has significant difficulty relating to and forming healthy relationships with his

peers.  Based on the pattern of DaShawn's inappropriate social functioning I find that DaShawn has marked impairments with respect to his social functioning.

Finally, I find that DaShawn has a marked impairment with respect to his ability to acquire and use information.  Despite the fact that DaShawn has scored in the low-average range on I.Q. tests, (which itself would not automatically lead to a finding of a disability) the record reveals that he has struggled academically throughout his schooling.  He repeated first grade, and yet has continued to perform below grade level in many areas including reading, writing and language skills.  The record is replete with evidence that despite the involvement of his grandparents and his placement in special education classes, DaShawn has been unable to consistently perform at grade level, and has almost always performed below age level.  Because the substantial evidence contained in the record reflects that DaShawn has been unable to comprehend and utilize the material being taught to him, I find that he suffers from a marked impairment in the area of acquiring and using information.

## CONCLUSION

For the reasons set forth above, I find that the substantial evidence in the record supports a finding that DaShawn Smith is disabled.  Accordingly, the decision of the Commissioner denying

plaintiffs' application for Social Security benefits is reversed, the plaintiffs' motion for judgment on the pleadings is granted, the defendant's motion for judgment on the pleadings is denied. The action is remanded to the Commissioner of Social Security for immediate calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

> S/ Michael A. Telesca
> _____
>      MICHAEL A. TELESCA
> United States District Judge

DATED:   Rochester, New York
         May 31, 2005